JohnstoN, Ch..
delivered the opinion of the Court.
A majority of my brethren concur with the Chancellor, in so much of his decree as sustains the demurrer to the amended or supplementary bill; except that, in their opinion, it should have been limited to the tract of 440 acres. In relation to that tract, they conceive the demurrer was well taken ; and they deem it unnecessary to add any thing to the observations of the Chancellor. On this point, 1 have not been able to concur with my brethren : but cheerfully obey their instruction to announce their opinion, as the opinion of the Court.
With respect to the tract of 122 acres, the Court is of opinion that, under the agreement of the parties, the demurrer should not have been sustained ; but that a writ of partition should have been awarded ; and it is so ordered.
2. The Court sustains the plaintiff’s fourth ground of appeal, relating to the sums paid for the hire of the clerk and auctioneer. The custom is to allow such charges, as expenditures for the benefit of the estate. It is not expected *282 that executors and administrators are to perform such services; and the expenditure is allowed upon the same princi-pie as overseer’s wages. Few trustees are qualified to act as .auctioneers; and a clerk not only performs a useful part in the sale, but in his recollection and in his memorandums are secured valuable and accurate testimony for the estate, in .relation to the contracts made at the sale. It is not suggested .that the sums paid to these agents were, in this instance, ¡unreasonable: and this inquiry being spared, the Court has no hesitation in allowing them upon general principles.
¡1 Strob. .E/96, ’
:Id. 98.
Id -93.
The remaining questions, in the case, relate to the crops, provisions, farming utensils, household furniture, notes of hand, judgments, and cash on hand, at the death of the testatrix, Elixabeth Garrett.
3. In relation to the crops &c., covered by the plaintiff’s ;5th exception, the Chancellor was very naturally led into error by the terms in which the Court delivered its opinion in this case, upon a former occasion. Certainly, the Chancellor on that occasion, did insist very strongly upon the •terms of the will, as evidencing an intention in the testatrix •to make a limited disposition. But the question before Him shews that the object of his observations was to establish a point wholly foreign to the inquiry embraced in the exception now under consideration. • The question then presented was thus stated by the Chancellor. “On the part of those interested under Mrs. Garrett’s will, it was contended, that in addition to the direct benefit which she derived under her husband’s will, she was entitled to one third of his entire real and personal estate (except the negroes) absolutely, as he had made no ultimate disposition of it: And that this interest in her husband’s estate passed, by the true construction of her will, to Thomas Garrett and the children of his deceased brother, Henry W. Garrett.”
The single question presented, was whether Mrs. Garrett intended to dispose of a distinct body of property, which she regarded as her estate, apart from another body of property, in which she may have been interested, but still considered .as her husband’s estate. The Chancellor dwells on her enumeration and description, wholly inapplicable to the latter, but strictly applicable to the former, as evidence that her testament was intended to be confined to the former.. He insists that she could not have forgotten the latter; and therefore her omission of it could not be set down to the account of a defective enumeration, but to a studied silence proceeding from a total indisposition to dispose of it. This intention pervaded the whole will. The residuary clauses were residuary clauses relating to a specific body of property, and net sweeping clauses extending to other property in •which she might have an interest.
3 jvtcC. R1492.-4 Id. 4-1-.
j jarman on wills, Ch. i.
The questions now presented are wholly different'
The opinion of the Court is that her will intended to dis-^ pose of the whole of the property which she considered as belonging to her: “all my property.”
The supposed defect in the enumeration of the property, to which the 5th exception refers, is not a defect which goes to the disposing provisions of the will, but to an act of administration to be porformed as preliminary to t-Tie disposition or distribution of the estate. It is apparent from a perusal of this inartificial and ungrammatical instrument, that the testatrix contemplated her property as consisting.of’ two general classes, one of which required to be sold for convenience- of distribution, while the other required no such process.. Now “all her property,” of both classes, she intended to- dispose of; and it was only in the direction for a sale of the tangible property, in order to prepare it for distribution*, that the enumeration is defective. We cannot suppose this deficiency in the mere detail, is evidence of want of purpose as to the end or object to which the detail tended.
4. The Court is of opinion, that all the notes of hand, and cash, existing at the death of the testatrix, passed under her will.
Wills of personal property, like wills of real estate, are actually nothing more than the declaration of the testator’s intention as it exists at their date, and as it arises from, a contemplation of the state and condition of his property at that time. But there' is a material difference between the two, in-this ;- that wills of realty are essentially conveyances (though-revocable,) and therefore can operate on no lands not then belonging to the testator ;• Whereas wills of personalty, are not only revocable, but as a- general rule, ambulatory, and will operate upon after-acquired property answering to the terms of the instrument, provided it be in the testator’s hand's at his death.
The general rule, then, is that testaments take effect, or as it is sometimes expressed, speak,, at the death of the testator, and are to be applied to his personal estate, as it exists at that time. And this should be the construction in all doubtful cases.
Where we can pronounce with confidence that the testator meant t'o announce an intention confined to the state of affairs existing a-t the date of his will, either in reference to the specific subjects which he wished to pass under it, of the persons to enjoy then'i, or truly intended in any other way to abridge the ambulatory capacity of the instrument :■ the construction must be such as to conform to the special intention thus indicated or expressed.
Thus if he refer to a sp >cific thing, as the subject of disposition, or to a class of things, with an intent to individual- *284 jze them, and make them the specific instruments of his intended bounty; or to a specific person, or a carefully described class of persons, with an evident design of constituting them the beneficiaries; we cannot go out of the terms of the will, without the hazard of defeating or departing from his intentions.
But if no such special intention appear in the will, the general rule obliges us to regard it as ambulatory from the time it was written till it became actually operative by the testator’s death.
In the case before us the only question is whether the testatrix, in the gift of her notes of hand and cash, referred to their present amount, with the intention of individualizing them, so that none other should pass, or whether this reference was a merely immaterial suggestion, the intention being, that her notes and cash should pass, irrespective of their present value or amount.
There are circumstances which persuade' us that the intention was not to limit the bequest to the securities and money then on hand. One is that to which I have already alluded. The testatrix intended to dispose of all her property ; from which we may infer an amplitude of intention in relation to the different classes of property mentioned in the will. Having mentioned notes and cash we are to presume that she did not intend any of them to remain undisposed of. Another circumstance is that there is no general residuary clause; from which we may presume that in her conception her legacies went to the full extent of her estate. The third circumstance is the phraseology of the clause itself. In speaking of the present amount of the notes and cash which she gave, does not the testatrix imply that at another time the legacies might be of a differnet amount ? If she had this meaning, it follows that she intended the bequest to be of a fluctuating, and not of a fixed character ; in other words she did not intend to detract from the ambulatory capacity of her' will. Our opinion is, that the testatrix intended to give her notes and cash, whatever there might be of them; and that her allusion to their amount was. an immaterial suggestion not intended to affect the bequest.
It is ordered that the decree be modified according to this opinion.
Dunkin', Ch. and Darg-an, Ci-i. concurred.
Caldwell, Ch. concurred so far as relates to the demurrer.

Decree modified.